## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINCOLN SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No. 20-CV-0060-CVE-JFJ** |
| | ) | |
| WILLIAM BARR, Attorney General | ) | |
| of the United States; | ) | |
| CHAD WOLF, Acting Secretary of the U.S. | ) | |
| Department of Homeland Security; | ) | |
| BARBARA OWLETT, Acting Field Office | ) | |
| Director for U.S. Immigration and Customs | ) | |
| Enforcement; and | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| | ) | |
| Respondents.[1] | ) | |

## OPINION AND ORDER

This matter is before the Court on petitioner Lincoln Smith's <u>pro se</u> 28 U.S.C. § 2241 petition

for writ of habeas corpus (Dkt. # 1), filed February 12, 2019,[2] respondent's motion to dismiss the

petition (Dkt. # 7), filed May 3, 2019, and petitioner's "motion to compel for failure to exhaust state

remedies and reconsideration to expedite," (Dkt. # 11), filed December 13, 2019. Petitioner, a native

---

[1]     Pursuant to FED. R. CIV. P. 25(d), the Court substitutes William Barr, U.S. Attorney General, in place of Matthew Whitaker, former Acting U.S. Attorney General, and substitutes Chad Wolf, Acting Secretary of the U.S. Department of Homeland Security, in place of Kirstjen Nielsen, former Secretary of the U.S. Department of Homeland Security. The Clerk of Court shall note these substitutions on the record.

[2]     Petitioner filed his habeas petition in the United States District Court for the Southern District of New York on February 12, 2019. Dkt. # 1, at 1. The case was transferred to the United States District Court for the Eastern District of Oklahoma on February 20, 2019, and transferred to this court on February 12, 2020. Dkt. ## 2, 3, 14, 15.

and citizen of Jamaica, is currently detained at the David L. Moss Criminal Justice Center, in Tulsa, Oklahoma, under the custody of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), pending a final decision on whether he should be removed from the United States. Petitioner claims his continued detention, without a bond hearing, is unlawful and unconstitutional. Respondents move to dismiss the petition as prematurely filed and, alternatively, urge the Court to deny relief on the merits. Dkt. ## 6, 7.[3] For the reasons discussed below, the Court denies respondents' motion to dismiss the § 2241 petition, grants in part and denies in part the § 2241 petition, and denies as moot petitioner's motion to compel and expedite ruling.

## I. Background

Petitioner is a native and citizen of Jamaica. Dkt. # 1, at 3.[4] In 1987, petitioner was admitted to the United States and began living in New York. Dkt. # 7-1, at 3. In August 2017, DHS officials initiated removal proceedings against petitioner by serving him a Notice to Appear. Dkt. # 1 at 3; Dkt. # 7-1, at 1-2, 4. The DHS alleged petitioner was removable, under 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii) and 8 U.S.C. § 1227(a)(2)(B)(i), because he had two prior convictions for cocaine possession, one prior conviction for cocaine possession with intent to distribute, and one prior

---

[3] Respondents filed a combined response and motion to dismiss, and that document was docketed twice: first, as a response (Dkt. # 6) and second, as a motion to dismiss (Dkt. # 7).

[4] For consistency, the Court's citations refer to the CM/ECF header page number located in the upper right-hand corner of each document.

conviction for grand larceny.[5]  Dkt. # 7-1, at 3-4.  ICE agents took petitioner into custody on or about

August 21, 2017.  Dkt. # 1 at 2; Dkt. # 7-4, at 2.

Petitioner appeared at his initial immigration hearing on September 20, 2017.  Dkt. # 7-2, at

3.  At the hearing, petitioner conceded removability under 8 U.S.C. § 1227(a)(2)(B)(i), based on his

convictions for possessing cocaine, but denied removability under § 1227(a)(2)(A)(iii), arguing that

his convictions for possession with intent to distribute and grand larceny were not aggravated

felonies.  Id. at 3, 5.  The immigration judge continued the matter until December 21, 2017, at

petitioner's request, so he could apply for cancellation of removal, asylum and withholding of

removal.  Id. at 3.  Ultimately, petitioner applied only for cancellation of removal.  Id. at 4-5.

Following a final hearing on April 30, 2018, the immigration judge denied petitioner's application

for cancellation of removal, denied his request for a continuance to apply for additional forms of

relief, and ordered petitioner removed to Jamaica.  Id. at 1, 5-7.  Petitioner filed an administrative

appeal with  the Board of Immigration Appeals (BIA).  Dkt. # 7-3, at 1-2.  The BIA denied

petitioner's motion to remand and dismissed his appeal on October 2, 2018.  Id. at 3-6.

On October 10, 2018, an agent from ICE's Office of Enforcement and Removal Operations

(ERO) completed an application for travel documents and submitted the application to the Jamaican

Consulate.  Dkt. # 7-4, at 2.  Five days later, the ERO agent contacted the Jamaican consulate to

---

[5]      An alien previously admitted to the United States is removable if he or she is convicted of
two or more crimes involving moral turpitude, at any time after admission, if the crimes do
not arise out of a single scheme of criminal misconduct, 8 U.S.C. § 1227(a)(2)(A)(ii); is
convicted of an aggravated felony at any time after admission, id. § 1227(a)(2)(A)(iii); or is
convicted "of a violation of . . . any law or regulation of a State, the United States, or a
foreign country relating to a controlled substance (as defined in section 802 of Title 21),
other than a single offense involving possession for one's own use of 30 grams or less of
marijuana," at any time after admission, id. § 1227(a)(2)(B)(i).

schedule an interview for petitioner. Dkt. # 7-4, at 2. On October 29, 2018, the date of the scheduled interview, petitioner refused to speak to the consulate and told the ERO agent that he had filed a petition for review (PFR) of the BIA's removal order. Id. The ERO agent later confirmed that petitioner filed a PFR and a motion for stay of removal in the United States Court of Appeals for the Second Circuit on October 25, 2018. Id. at 2-3.

By filing a PFR and a motion for stay of removal, petitioner "triggered the 'forbearance agreement.'" Dkt. # 7, at 3; Dkt. # 7-4, at 3. Under that agreement, the ERO has agreed not to remove aliens who have a PFR pending before the Second Circuit and who have filed a motion for stay of removal. Dkt. # 7, at 3; see Efstathiadis v. Holder, 752 F.3d 591, 599 n.5 (2d Cir. 2014) ("While a petition is pending in this Court, the Government's forbearance policy assures that the filing of a motion to stay removal, as has been done here, will suffice to prevent removal."). Consistent with the ERO's forbearance agreement, the ERO ceased all efforts to remove petitioner. Dkt. # 7-4, at 3.

On or about November 13, 2018, petitioner was transferred to the Moore Detention Center, in Okmulgee, Oklahoma. Dkt. # 1, at 2; Dkt. # 7-4, at 3. Petitioner filed a motion for reconsideration with the BIA on November 27, 2018. Dkt. # 7-5, at 1.

On February 12, 2019, while his motion for reconsideration was pending before the BIA, petitioner filed the instant § 2241 petition for writ of habeas corpus in the United States District Court for the Southern District of New York. Dkt. # 1, at 1. Citing petitioner's transfer to the Moore Detention Center, that court transferred the petition to the United States District Court for the Eastern District of Oklahoma on February 20, 2019. Dkt. ## 2, 3. Six days later, that court directed respondents to file a response. Dkt. # 4.

On April 24, 2019, petitioner was transferred to the David L. Moss Criminal Justice Center in Tulsa, Oklahoma. Dkt. # 7-4, at 3. That same day, the BIA dismissed his motion for reconsideration as untimely and, alternatively, denied the motion on the merits. Dkt. # 7-5, at 1-2.

On May 3, 2019, respondents filed a response (Dkt. # 6) to the § 2241 petition and a motion to dismiss the petition (Dkt. # 7). Petitioner filed a response (Dkt. # 10) to the dismissal motion on August 21, 2019.

Meanwhile, on August 8, 2019, the Second Circuit granted petitioner's motion for a stay of removal, pending its decision on his PFR, and appointed counsel to represent him. Dkt. # 10, at 2; Dkt. # 13, at 2; see Dkt. # 86, Smith v. Barr, 2d Cir. Docket No. 18-3190 (Aug. 8, 2019).[6] In the order granting the stay, the Second Circuit specifically instructed counsel for petitioner to brief "whether Petitioner's convictions are aggravated felonies that render him removable and ineligible for cancellation of removal." Dkt. # 86, Smith v. Barr, 2d Cir. Docket No. 18-3190. Petitioner's PFR remains pending.[7]

Petitioner filed a "motion to compel for failure to exhaust state remedies and reconsideration to expidite [sic]" (Dkt. # 11) on December 13, 2019, requesting an expedited ruling on his habeas

---

[6]     Both parties identify petitioner's Second Circuit case as Case No. 18-3190. Dkt. # 10, at 2; Dkt. # 13, at 3. As necessary to the disposition of petitioner's § 2241 petition, the Court therefore takes judicial notice of the public docket sheet and filings in Smith v. Barr, 2d Cir. Docket No. 18-3190. See United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (discussing federal courts' discretion to take judicial notice of publicly-filed records in other courts "concerning matters that bear directly upon the disposition of the case at hand").

[7]     Petitioner filed his opening brief in the Second Circuit case on December 10, 2019, the Government filed its answer brief on March 10, 2020, and petitioner's reply brief is due at the end of March. Dkt. # 13, at 2; see Docket Sheet, Smith v. Barr, 2d Cir. Docket No. 18-3190.

petition.[8]  On February 10, 2020, respondents filed a "supplement" (Dkt. # 13) to the motion to dismiss.  Two days later, citing petitioner's transfer to the David L. Moss Criminal Justice Center, the United States District Court for the Eastern District of Oklahoma transferred the § 2241 petition to this court.  Dkt. # 14.

## II.    Discussion

Petitioner claims that his continued detention in ICE custody is unlawful, under 8 U.S.C. § 1226 and 8 U.S.C. § 1231, and violative of his rights under the Fifth Amendment's Due Process Clause, as interpreted in <u>Demore v. Kim</u>, 538 U.S. 510 (2003), and <u>Zadvydas v. Davis</u> 533 U.S. 678 (2001).  Dkt. ## 1, 10.[9]  Petitioner seeks federal habeas relief, under 28 U.S.C. § 2241, and requests his immediate release from custody, either on his own recognizance or under bond and subject to conditions of supervision.  Dkt. # 1, at 6, 9; Dkt. # 10, at 10.  Alternatively, he requests to be taken before an immigration judge for an individualized hearing at which the Government would bear the burden of demonstrating that his continued detention is justified because he is either a flight risk or a danger to the community.  Dkt. # 1, at 5; Dkt. # 10, at 10.

Respondents contend that "[p]etitioner's detention pending removal is statutorily authorized and does not raise any constitutional concerns."  Dkt. # 7, at 7.  They urge this Court to dismiss the petition as premature because petitioner filed it before he had been held in "post-order detention," under § 1231(a), for the presumptively reasonable 6-month period established in <u>Zadvydas</u>.  Dkt. #

---

[8]    Because the Court is ruling on the § 2241 petition in this opinion and order, the Court denies as moot his motion to compel or expedite a ruling.

[9]    Because petitioner appears <u>pro se</u>, the Court must liberally construe his petition and other filings.  <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the rule of liberal construction neither requires nor permits the Court to assume the role of petitioner's advocate.  <u>Id.</u>

7, at 1-2, 5. Alternatively, respondents urge the Court to deny the petition because petitioner "prevent[ed] DHS from removing him" by seeking judicial review of his removal order and "triggering" the forbearance agreement. Dkt. # 7, at 2, 6-7.

### A. Jurisdiction

Under 28 U.S.C. § 2241, federal courts have jurisdiction to determine whether a habeas petitioner is being held "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3); Zadvydas, 533 U.S. at 687. In the immigration context, Congress has placed various limits on the exercise of this jurisdiction. See 8 U.S.C. § 1252. For example, a federal court may not exercise federal habeas jurisdiction to review certain decisions denying discretionary relief, see 8 U.S.C. § 1252(a)(2)(B), or to review any final order of removal against a criminal alien, id. § 1252(a)(2)(C). But these limits do not "preclud[e] review of constitutional claims," id. § 1252(a)(2)(D), or "examin[ation of] the statutory . . . bases for an immigration detention," Carbajal v. Holder, 43 F. Supp. 3d 1184, 1186 (D. Colo. 2014). See also Zadvydas, 533 U.S. at 687-88 (discussing limits on judicial review in immigration context and concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"). Because petitioner challenges the statutory and constitutional bases of his continued detention, this Court has jurisdiction to consider his request for habeas relief.

### B. Statutory framework

Before addressing the parties' arguments, the Court finds it helpful to provide an overview of the statutory framework that authorizes an alien's detention pending removal. Two statutes are implicated here: 8 U.S.C. § 1226, which authorizes detention during removal proceedings, and 8 U.S.C. § 1231, which authorizes detention during and beyond the removal period.

### 1. Detention during removal proceedings

Section 1226(c) governs the arrest and detention of criminal aliens, i.e., those aliens who, like petitioner, have been charged with removability under § 1227(a)(2) for committing criminal offenses. Under § 1226(c)(1), the Attorney General is required to "take into custody" any criminal aliens charged with removability. And § 1226(c)(2) authorizes the Attorney General to release criminal aliens during removal proceedings "'only if the Attorney General decides . . . that release of the alien from custody is necessary' for witness-protection purposes and 'the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.'" Jennings v. Rodriguez, 138 S. Ct. 830, 838 (2018) (quoting 8 U.S.C. § 1226(c)(2)). Absent this narrow exception for witness-protection purposes, detention of criminal aliens during their removal proceedings is mandatory. See id. at 846 (noting that "§ 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States'" (emphasis in original) (quoting 8 U.S.C. § 1226(a))).

As the Jennings Court noted, "§ 1226(c) does not on its face limit the length of the detention it authorizes." 138 S. Ct. at 846. But the Government's authority to detain a criminal alien under § 1226(c) does have "'a definite termination point': the conclusion of removal proceedings." Id. (quoting Demore v. Kim, 538 U.S. 510, 529 (2003)). In Demore, the United States Supreme Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." 538 U.S. at 531. The Demore Court reasoned that "[s]uch detention necessarily serves

the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 528.  The Demore Court further reasoned that the mandatory detention authorized under § 1226(c) is for the "limited period" necessary to complete removal proceedings.  538 U.S. at 529, 531.  In a concurring opinion, Justice Kennedy noted, however, that "if the continued detention [under § 1226(c)] became unreasonable or unjustified," the Due Process clause might require "an individualized determination as to [the detained alien's] risk of flight and dangerousness."  538 U.S. at 532 (Kennedy, J., concurring).

### 2.  Detention during and beyond the removal period

Section 1231(a) governs the detention, release and removal of aliens previously admitted to the United States who have been ordered removed.  Under § 1231(a)(1)(A), the Attorney General ordinarily must effect the alien's removal "within a period of 90 days" after the alien is ordered removed.  That 90-day period is referred to as the removal period.  8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following dates:

> (i)   The date the order of removal becomes administratively final.
>
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  Detention of any aliens ordered removed is mandatory during the 90-day removal period and the release of criminal aliens during the removal period is prohibited.  See id. § 1231(a)(2) (providing "Attorney General shall detain the alien" during the removal period and further providing that "[u]nder no circumstances shall the Attorney General release an alien who has

been found . . . deportable under section 1227(a)(2)").  But in some circumstances, the removal

period, and thus an alien's mandatory detention, may be extended beyond 90 days.  <u>See</u> 8 U.S.C.

§ 1231(a)(1)(C) (providing for extension of removal period and continued detention "during such

extended period if the alien fails or refuses to make timely application in good faith for travel or

other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal

subject to an order of removal").

In addition, § 1231(a) contemplates that some aliens, including criminal aliens, may either

be detained or released under supervision after the removal period ends but before they can be

removed from the United States.  <u>See</u> 8 U.S.C. § 1231(a)(3) (providing that aliens not removed

within the removal period "shall be subject to supervision under regulations prescribed by the

Attorney General," including certain provisions required by statute); <u>id.</u> § 1231(a)(6) ("An alien

ordered removed who is . . . removable under . . . section 1227(a)(2) . . . or who has been determined

by the Attorney General to be a risk to the community or unlikely to comply with the order of

removal, may be detained beyond the removal period and, if released, shall be subject to the terms

of supervision in paragraph (3).").

In <u>Zadvydas</u>, the Supreme Court found that § 1231(a)(6), referred to in <u>Zadvydas</u> as the

"post-removal-period detention statute," was ambiguous and could be understood as "authoriz[ing]

indefinite, perhaps permanent, detention."  533 U.S. at 688, 697-99.  To avoid the "serious

constitutional threat" that "indefinite detention of an alien" would pose to the alien's rights under

the Due Process Clause of the Fifth Amendment, the <u>Zadvydas</u> Court" concluded that the post-

removal-period detention permitted by § 1231(a)(6) must be limited "to a period reasonably

necessary to bring about [the] alien's removal from the United States."  533 U.S. at 689-90, 693-94,

699. The <u>Zadvydas</u> Court further concluded "that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." <u>Id.</u> at 699.

And, "for the sake of uniform administration in the federal courts," that would be tasked with determining "whether the detention in question exceeds a period reasonably necessary to secure removal," the <u>Zadvydas</u> Court held that a post-removal-period detention of six months is "presumptively reasonable." <u>Id.</u> at 700-01. The Supreme Court further stated, "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." <u>Id.</u> at 701.

### C.    Analysis

Liberally construing the § 2241 petition, petitioner presents a two-pronged attack on his prolonged mandatory detention. First, he argues that his continued detention, without an individualized bond hearing, is not authorized under either 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231(a)(6). Dkt. # 1, at 4-9; Dkt. # 10, at 2. Second, he argues that even if his detention is authorized by either statute, it has extended beyond the "limited period" contemplated in <u>Demore</u> and beyond the point of reasonableness contemplated in <u>Zadvydas</u>, and is thus unconstitutional. Dkt. # 1, at 4-9.

Respondents disagree on both points and urge this Court to either dismiss or deny the § 2241 petition. Dkt. ## 7, 13. They urge dismissal on the basis that petitioner "had not been in post-order custody for six months" when he filed his § 2241 petition. Dkt. # 7, at 5. Thus, they argue, his detention was "presumptively reasonable" when he filed his petition, making his <u>Zadvydas</u> claim unripe. <u>Id.</u> Alternatively, respondents urge the Court to deny habeas relief for three reasons. First,

they contend that even though petitioner was in custody for nearly 18 months when he filed the instant habeas petition, "the majority of that detention occurred prior to his final order of removal on October 2, 2018," and his "pre-final order" detention—from August 21, 2017, through October 2, 2018—was both mandated by § 1226(c) and constitutional under <u>Demore</u>. Dkt. # 7, at 5-6. Second, they contend that petitioner's continued detention is the product of his own decision to file a PFR and a motion for stay of removal in the Second Circuit, "thereby triggering an automatic stay . . . pursuant to the 'forbearance agreement,'" and "preventing his removal." <u>Id.</u> at 6-7; Dkt. # 13, at 1-2. Third, they contend petitioner "cannot demonstrate that his removal is not likely in the reasonably foreseeable future" because "it is expected that [p]etitioner can be removed to Jamaica once he is no longer subject to a stay of removal." Dkt. # 7, at 7.

### 1. Petitioner's request for habeas relief is not premature.

As a preliminary matter, three essential facts are undisputed. First, it is undisputed that petitioner has been in ICE custody since August 21, 2017. Dkt. # 1, at 2; Dkt. # 7, at 5; Dkt. # 7-4, at 2. Thus, as petitioner alleges, when he filed the instant habeas petition, on February 12, 2019, he had been in ICE custody for nearly 18 months. Dkt. # 1, at 1. Second, petitioner alleges that he has not had an individualized bond hearing, at any point, to determine whether his continued detention is justified, <u>see</u> Dkt. # 1, at 5, 7, 9, and respondents do not suggest otherwise, <u>see</u>, Dkt. ## 7, 13, generally. Third, it is undisputed that the Second Circuit granted petitioner's motion for stay of removal on August 8, 2019, pending that court's ruling on his PFR. Dkt. # 10, at 2; Dkt. # 13, at 2. To date, petitioner has been detained in ICE custody for over two years without an individualized bond hearing.

Despite these facts, respondents argue that petitioner's decision to file his § 2241 petition on February 12, 2019, before the expiration of the presumptively reasonable 6-month post-removal-period contemplated in Zadvydas, requires dismissal of his petition. Dkt. # 7, at 4; see Saeku v. Johnson, No. 1:16-CV-155-O, 2017 WL 4075058, at * 3 (N.D. Tex. Sept. 14, 2017) (unpublished)[10] ("In order for an alien to establish a prima facie claim for habeas relief under the Zadvydas rationale, therefore, he must first establish that he has been in post-removal order custody for more than six months at the time the habeas petition is filed."). The Court agrees that any potential Zadvydas claim petitioner advances in his § 2241 petition was not ripe when he filed the petition and that it would be appropriate to dismiss his unripe Zadvydas claim without prejudice to refiling. See Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004) (dismissing petitioner's unripe Zadvydas claim, without prejudice, and noting that petitioner could file new § 2241 petition in the future if his detention continued).

But respondents' argument for dismissal rests on a narrow reading of petitioner's arguments and, for several reasons, the Court disagrees that petitioner's request for habeas relief is premature. First, petitioner challenges his detention as unconstitutional, not only under Zadvydas but also under Demore. See Dkt. # 1, generally. As respondents acknowledge, when petitioner filed his petition, he had been detained from August 21, 2017, through October 2, 2018, as mandated by § 1226(c). Dkt. # 7, at 5-6. While they argue that this 408-day period of "pre-final order" detention was constitutional under Demore, petitioner disagrees. Dkt. ## 1, 10. And, as further discussed below, petitioner's detention during this period extended well beyond the six-month detention contemplated

---

[10]    The Court cites this unpublished decision, and all other unpublished decisions herein, as persuasive authority. See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

in Demore.  538 U.S. at 530.  At the very least, petitioner had a ripe constitutional claim under Demore arising from this period of detention when he filed the instant petition.

Second, as respondents state, petitioner's 90-day removal period commenced on October 2, 2018, when the BIA dismissed his appeal.  Dkt. # 7, at 5; see 8 U.S.C. § 1101(a)(47)(B)(i) (providing that removal order becomes final upon BIA's determination affirming immigration judge's order); id. § 1231(a)(1)(B)(i) (providing for commencement of removal period on "[t]he date the order of removal becomes administratively final").  As of October 3, 2018, the authority for petitioner's detention therefore shifted from § 1226(c) to § 1231(a).  See Carbajal, 43 F. Supp. 3d at 1189.  This shift in authority likely mooted any statutory challenge petitioner could have presented to his pre-final order detention, see id., but it did not moot his claim that his prolonged detention violates the Fifth Amendment.

Third, petitioner was detained for the 90-day removal period, as mandated by § 1231(a), from October 3, 2018, through December 31, 2018, but he was not removed.  See 8 U.S.C. § 1231(a)(1)(A) (requiring Attorney General to effect removal within 90 days of order or removal). His detention continued beyond the removal period, as permitted under § 1231(a)(6).  And, as respondents contend, petitioner's post-removal-period detention—from January 1, 2019, through March 31, 2019—was presumptively reasonable.  See Zadvydas, 533 U.S. at 701.  But that detention continued for an additional 130 days before the Second Circuit granted his motion for stay of removal on August 8, 2019.  On these facts, petitioner arguably had a ripe constitutional claim under Zadvydas as of April 1, 2019, after he filed the instant petition but well before briefing was complete.

Fourth, and finally, respondents' focus on the viability of petitioner's Zadvydas claim ignores the effect of the Second Circuit's August 8, 2019 order granting petitioner's motion for stay of removal. Dkt. ## 7, 13. When the Second Circuit granted the stay, that action shifted the authority for petitioner's detention back to § 1226(c). See Hechavarria v. Sessions, 891 F.3d 49, 51, 56 (2d Cir. 2018) ("Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review. As previously discussed, 8 U.S.C. § 1231(a)(1)(B)(ii) provides that "[i]f the removal order is judicially reviewed and if a court orders a stay of removal of the alien," the alien's 90-day removal period does not commence until "the date of the court's final order." And § 1231(a) provides that the latest occurring event described in that subsection triggers commencement of the removal period. In Hechavarria, the Second Circuit relied on the plain language of § 1231(a) to hold that "[s]ection 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review." 891 F.3d at 56. The Second Circuit did not break new ground with this holding and noted that "all other circuits to have considered the issue have arrived at the same conclusion." 891 F.3d at 57 (citing cases from the Third, Sixth and Ninth Circuits that reached the same conclusion, and noting the Eleventh Circuit, in a footnote in Akinwale v. Reno, 216 F.3d 1273 (11th Cir. 2000), "assum[ed] without deciding that section 1231 applied to a petitioner with a stay of removal pending the outcome of his petition for review"). In short, because the Second Circuit granted a stay of removal, neither § 1231(a)(6) nor Zadvydas governs petitioner's challenge to his detention. Rather, under Hechavarria's reasoning, petitioner is currently detained under § 1226(c), for a second time. As further discussed below, this second period of detention has now exceeded six months and adds credence to his claim that his prolonged detention, without an individualized hearing, violates his due process rights.

15

For these reasons, the Court denies respondents' motion to dismiss the § 2241 petition.

## 2. Petitioner's current detention is authorized by statute.

As just discussed, the time line of petitioner's removal proceedings reveals that he is currently detained under § 1226(c). To the extent petitioner claims his detention is not authorized by statute, Jennings forecloses that argument. Because petitioner is allegedly removable under § 1227(a)(2) as a criminal alien, his detention during removal proceedings is mandated by § 1226(c)(1). Jennings, 138 S. Ct. at 846-47. And nothing in the record suggests that petitioner is eligible for release under the narrow exception for witness-protection purposes. See id.; 8 U.S.C. § 1226(c)(2); Dkt. ## 1, 7, 10, 13. Thus, to the extent petitioner seeks habeas relief on his claim that his prolonged mandatory detention is not authorized by statute, the Court denies his petition.

## 3. Petitioner's prolonged mandatory detention is unconstitutional.

Petitioner's only remaining claim is that his detention, though authorized under § 1226(c), exceeds the "limited period" contemplated in Demore and is thus unconstitutional. Dkt. # 1, at 4-9.

Respondents briefly address this claim, but only as to his initial detention between August 21, 2017, and October 2, 2018. Dkt. # 7, at 5-6. They argue petitioner's detention for that "limited period" was constitutional because Demore held that "an alien does not have a constitutional right to be released from detention during the limited period in which removal proceedings are pending." Dkt. # 7, at 5 (quoting Demore, 538 U.S. 510, 531 (2003)). This argument is not persuasive as to either period of petitioner's detention that has been authorized by § 1226(c).

In Demore, the Supreme Court noted that it was "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. at 523 (quoting Reno v. Flores, 507 U.S. 262, 306 (1993)). But it also held that mandatory detention for the "limited period"

necessary for removal proceedings is constitutional.  538 U.S. at 529-30.  In doing so, the Demore

Court reasoned that detention during removal proceedings "necessarily serves the purpose of

preventing deportable criminal aliens from fleeing prior to or during their removal proceedings."

Id. at 528.  It further reasoned that, unlike the "'indefinite and 'potentially permanent'" post-

removal-period detention contemplated in Zadvydas, detention during an alien's removal proceeding

has "a definite termination point," namely, the conclusion of the removal proceeding, and generally

lasts for a "limited period" of time.  Demore, 538 U.S. at 529-30 (quoting Zadvydas, 530 U.S. at

690-91).

But the alien in Demore was detained under § 1226(c) for a just over six months before his

removal hearing before the immigration judge.  538 U.S. at 513, 531 & n.15.  And, when Demore

was decided, the Supreme Court relied on data provided by the Executive Office for Immigration

Review showing that "in 85% of the cases in which aliens are detained pursuant to § 1226(c),

removal proceedings are completed in an average time of 47 days and a median of 30 days," and that

"[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge

to the Board of Immigration Appeals, appeal takes an average of four months, with a median time

that is slightly shorter."  538 U.S. at 529.

More recent data shows these averages were low, particularly for aliens who, like petitioner,

pursue an administrative appeal and seek judicial review.  See e.g., Jennings, 138 S. Ct. at 869

(Breyer, J., dissenting) ("The Government now tells us that the statistics it gave to the [Supreme]

Court in Demore were wrong.  Detention normally lasts twice as long as the Government then said

it did."); Rodriguez v. Nielsen, No. 18-CV-04187-TSH, 2019 WL 74915555, at *5 (N.D. Cal. Jan.

7, 2019) (unpublished) (noting that "[c]urrent EOIR data demonstrate that many section 1226(c)

detainees continue to be detained much longer than the brief period considered in <u>Demore</u>," that "in cases in which an appeal was filed, in most years [between 2003 and 2015] the average length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in <u>Demore</u>," and that the General Accounting Office "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days").

Several courts have concluded that because <u>Demore</u> relied on incorrect data, it simply does not address the question of when an alien's prolonged mandatory detention under § 1226(c) becomes "unconstitutionally prolonged." <u>Singh v. Choate</u>, No. 19-CV-00909-KLM, 2019 WL 3943960, at *4 (D. Colo. Aug. 21, 2019) (unpublished); <u>see</u> <u>also</u> <u>Chairez-Castrejon v. Bible</u>, 188 F. Supp. 3d 1221, 1225-26 (D. Utah 2016) (noting that <u>Demore</u>'s holding was limited and discussing split among circuit courts as to the best method to analyze reasonableness of prolonged mandatory detention during removal proceedings). In <u>Chairez-Castrejon</u>, the district court noted that "each circuit [that has considered the issue] has found it necessary to read an implicit reasonableness requirement into [§ 1226(c)] itself, generally based on the doctrine of constitutional avoidance," but the circuit courts had split as to how to apply that reasonableness requirement. 188 F. Supp. 3d at 1225-26. Some courts adopted a bright-line rule, reading § 1226(c) as implicitly limiting the length of mandatory detention, without a bond hearing, to six months and requiring periodic bond hearings, while other courts applied a "'fact-dependent inquiry requiring an assessment of all the circumstances of any given case' to determine whether detention without an individualized hearing is unreasonable." <u>Chairez-Castrejon</u>, 188 F. Supp. 3d at 1226 (quoting <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221, 234 (3d Cir. 2011)).

In Jennings, the Supreme Court rejected the bright-line rule by concluding that the plain and unambiguous language of § 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." 138 S. Ct. at 847. But Jennings declined to consider the merits of the constitutional arguments presented in that case. Id. at 851.

After Jennings, several courts have continued to analyze the reasonableness of prolonged mandatory detention under § 1226(c), on a case-by-case basis, by considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

Singh, 2019 WL 3943960, at *5 (quoting Jamal A. v. Whitaker, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)); see also Borbot v. Warden Hudson Cty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (noting that Jennings did not impact the Third Circuit's "constitutional holding in Diop that detention under § 1226(c) may violate due process if unreasonably long" or its holding "that due process entitles § 1226(c) detainees to a bond hearing at some point, with the exact time varying with the facts of the case"); Thompson v. Horton, No. 4:19-CV-00120-AKK-HNJ, 2019 WL 4793170, at * 5 n.7 (N.D. Ala. Aug. 26, 2019) (unpublished) (collecting cases decided after Jennings that consider as-applied due process challenges to § 1226(c)).

Because petitioner's arguments can be reasonably construed as presenting an as-applied constitutional challenge to his prolonged mandatory detention under § 1226(c), the Court finds it appropriate to conduct the multi-factor reasonableness analysis to determine whether his prolonged detention is unconstitutional.

The first factor the Court considers is the total length of petitioner's detention. As previously stated, petitioner has now been held in ICE custody since August 2017, a little over two years and six months, without an individualized bond hearing. That time includes detention during three distinct periods. Petitioner's initial 408-day detention, between his August 21, 2017 arrest and the BIA's October 2, 2018 decision, while mandated by § 1226(c), more than doubled the "limited period" contemplated in Demore. That said, standing alone, it seems on par with more recent data indicating "that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." Rodriguez, 2019 WL 74915555, at *5. Petitioner's subsequent 310-day detention, between the commencement of his 90-day removal period on October 3, 2018, and the Second Circuit's grant of his request for a stay on August 8, 2019, though mandated by § 1231(a)(1)(A) and (mostly) permitted by § 1231(a)(6), was also nearly twice the presumptively reasonable 180-day detention contemplated in Zadvydas. As previously stated, Zadvydas does not govern petitioner's current detention, but it still informs this Court's consideration of whether this portion of petitioner's detention was reasonable. Finally, petitioner's current period of mandatory detention under § 1226(c), which began on August 9, 2019, has, to date, lasted about 215 days. While this current period of detention is not significantly longer than the alien's detention in Demore, petitioner's total length of detention, without an individualized bond hearing, is slightly more than 30 months, which is more than 5 times the "limited period" of detention contemplated in Demore. Other courts have found detentions approaching or exceeding more than one year constitutionally unreasonable. See, e.g., Singh, 2019 WL 3943960, at *5 (considering detention of 20 months during pendency of administrative appeal unreasonable); Jamal A., 358 F. Supp. 3d at 859 (finding 19-month detention favored granting a bond hearing); Lett v. Decker, 346 F. Supp. 3d 379,

387 (S.D.N.Y 2018) (finding detention of 10 months unreasonable). Similarly, under the facts of this case, the Court finds that the total length of petitioner's mandatory detention weighs in his favor.

Second, the Court considers the likely duration of petitioner's future detention. Notably, while there is an obvious termination point for petitioner's current detention, namely, the Second Circuit's final order, it is not clear how long petitioner's detention is likely to continue. As previously stated, the Government recently filed its answer to the PFR, and petitioner's reply brief is due at the end of March. The Court declines to speculate on when the Second Circuit might issue its decision in the case. In <u>Soberanes</u>, 388 F.3d at 1311, the Tenth Circuit rejected an alien's challenge to his continued detention when the alien had appealed his final removal order to the Ninth Circuit and his appeal was pending at the time of his habeas appeal. The Tenth Circuit reasoned that the alien's detention was "directly associated with a judicial review process that has a definite and evidently impending termination point, and, thus, is more akin to detention during the administrative review process, which was upheld in <u>Demore</u>." <u>Sobreranes</u>, 388 F. 3d at 1311. As previously discussed, the mandatory detention upheld in <u>Demore</u> lasted approximately six months, not more than 30 months like petitioner's. And, even though petitioner's prolonged detention, like that of the alien in <u>Soberanes</u>, is "neither indefinite nor potentially permanent," the duration of his detention has far exceeded the duration of alien's detention in <u>Demore</u>, and it will continue at least until the Second Circuit issues its ruling. Moreover, when the Second Circuit issues its ruling, that will trigger a second removal period that could, presumably, last up to another six months. For these reasons, this factor too weighs in petitioner's favor.

Third, the Court considers the conditions of petitioner's confinement. The record reflects that petitioner, a resident of New York, has been detained in two different county jails in Oklahoma

since November 2018. Dkt. # 7-4, at 2-3. Even from this limited record, it is reasonable to infer that petitioner, a civil detainee, is housed in the same conditions as county inmates who are being detained pending or during their state criminal proceedings. In addition, it is reasonable to infer that petitioner has had limited contact with relatives and friends in New York at least since November 2018. This factor therefore weighs in petitioner's favor.

The fourth factor requires the Court to consider whether the petitioner can be faulted for any delays in the removal proceedings. As noted, respondents' arguments primarily address whether petitioner is lawfully detained under § 1231(a)(6). But at least one of their arguments suggest that petitioner has delayed his own proceedings. Specifically, they argue that petitioner's decision to file a PFR and a motion for stay of removal in the Second Circuit, on October 25, 2018, either (1) extended his 90-day removal period under § 1231(a)(1)(C), or (2) suspended the running of his post-removal-period and, presumably, supports his continued detention. Dkt. # 7, at 6-7. As previously stated, § 1231(a)(1)(C) provides for extension of the 90-day removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal"). Respondents contend "[n]umerous decisions have denied habeas relief to aliens whose detention has been prolonged due to filings in the Second Circuit that trigger the 'forbearance agreement,' or other litigation tactics that prevent removal." Dkt. # 7, at 6-7 (citing Beckford v. Lynch, 168 F. Supp. 3d 533, 538-39 (W.D.N.Y. 2016)). But the Court finds more persuasive several decisions from other courts, including the Second Circuit. Those decisions have rejected the notion that seeking judicial review of a removal order is (1) either a "litigation tactic" or otherwise comparable to the actions contemplated in § 1231(a)(1)(C) that "prevent the alien's removal" or (2) an action that suspends the

22

90-day removal and 90-day post-removal periods.  See Hechavarria, 891 F.3d at 54, 56 (emphasizing that the Immigration and Nationality Act "explicitly provides for judicial review of removal orders in the federal courts of appeals" and rejecting the Government's suggestion that appellate "review of [the petitioner's] underlying removal order is a mere formality that simply 'temporarily interrupted' 'DHS's ability to carry out [the petitioner's] removal'"); Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 476 (3d Cir. 2015) ("Where questions are legitimately raised . . . [courts] cannot 'effectively punish' these aliens for choosing to exercise their legal right to challenge the Government's case against them by rendering 'the corresponding increase in time of detention [as] reasonable.' (citations omitted)), abrogated in part on other grounds by Jennings, 138 S. Ct. at 847; Chairez-Castrejon, 188 F. Supp. 3d at 1229 (noting courts have distinguished between dilatory litigation tactics and an alien's exercise of his or her rights to pursue available legal remedies); Shenxing Zeng v. Tripp, No. CV 07-0682 JB/WPL, 2007 WL 9729144, at *4 (D.N.M. Oct. 3, 2007) (unpublished) (rejecting decisions holding "that an alien 'acts to prevent' his removal within the meaning of [§ 1231(a)(1)(C)] by filing a petition for review" as "inconsistent with 8 U.S.C. § 1231(a)(1)(B)(ii), which provides that judicial review of a removal order does not delay the running of the removal period unless a court issues a stay of removal," and concluding that § 1231(a)(1)(C)'s plain language "suggests that it applies only to acts of bad faith, not to the exercise of legal rights").  The Court thus finds that petitioner did not delay his removal proceedings by exercising his rights to seek judicial review or by requesting a stay of removal, and this factor therefore weighs in petitioner's favor.

Fifth, the Court considers whether the Government has delayed the removal proceedings. On the record presented, it appears the Government did not contribute to any significant delays

following petitioner's arrest and through the time his removal order was administratively final on October 2, 2018. And, it appears the ERO took reasonably prompt actions to effect petitioner's removal until October 29, 2018, or shortly thereafter, when the ERO agent learned that petitioner had filed a PFR and a motion for stay of removal in the Second Circuit. Dkt. # 7-4, at 2-3. When the ERO agent confirmed that petitioner took these actions, the ERO ceased all efforts to effect petitioner's removal, pursuant to the ERO's forbearance policy. Id. The Government also filed a response in opposition to petitioner's motion for stay of removal. See Dkt. # 86, Smith v. Barr, 2d Cir. Docket No. 18-3190 (Aug. 8, 2019). While the ERO's policy agreement may have contributed to some delay, the Court nevertheless finds this factor weighs favorably for the Government.

Sixth, and finally, the Court considers the likelihood that petitioner's removal proceedings will result in a final order of removal. On this point, respondents assert "it is expected that [p]etitioner can be removed to Jamaica once he is no longer subject to a stay of removal." Dkt. # 7, at 7. This may be true. But respondents' assertion seems to overlook that petitioner's PFR is pending in the Second Circuit. Moreover, the Second Circuit granted petitioner's motion for stay of removal (despite the forbearance agreement's "automatic stay") and appointed counsel for petitioner. See Dkt. # 86, Smith v. Barr, 2d Cir. Docket No. 18-3190 (Aug. 8, 2019). The Second Circuit also instructed counsel to brief the very issues that petitioner has consistently asserted throughout his removal proceedings, i.e., that the Government has incorrectly classified some of his convictions as aggravated felonies. Id. Neither the appointment of counsel nor the identification of specific issues guarantees a favorable outcome for petitioner, but these actions tend to undermine respondents' apparent position that petitioner's removal is nearly certain and hinges only on the Second Circuit's lifting of the stay. This factor does not appear to favor either party.

Because the majority of these factors weigh in petitioner's favor, the Court concludes that petitioner's prolonged detention, without an individualized bond hearing, has become unreasonable and thus violates his Fifth Amendment right to due process. But the Court does not find that this violation requires petitioner's requested remedy of immediate release. Instead, the Court concludes that petitioner is entitled to an individualized bond hearing before an immigration judge for a determination as to whether his continued detention is justified by the stated purposes of the mandatory detention statutes: ensuring the safety of the community and ensuring that petitioner will be available when, or if, it is finally determined that he should be removed from the United States. Demore, 538 U.S. at 532 (Kennedy, J., concurring).

## IV. Conclusion

Based on the foregoing, the Court concludes that petitioner's prolonged mandatory detention, without an individualized bond hearing, is authorized by 8 U.S.C. § 1226(c) but does not comport with the Fifth Amendment's guarantee of due process. Consequently, the Court grants in part and denies in part the petition for writ of habeas corpus. Within thirty (30) days from the entry of this order, respondents shall take petitioner before an immigration judge for an individualized bond hearing and a determination as to whether it is necessary to continue to detain him.[11] Counsel for respondents shall report to this Court within ten (10) days following the bond hearing regarding

---

[11]    Petitioner asserts that the Government should bear the burden of proof at his bond hearing to demonstrate that his continued detention is justified either (1) because he is a flight risk or (2) because he is a danger to the community. Dkt. # 1, at 5; Dkt. # 10, at 10. But because the burden of proof issue is not adequately briefed, the Court will not resolve it. Instead, the immigration judge assigned to petitioner's bond hearing is to determine which party bears the burden of proof.

compliance with this order.  Respondents' written report must include notification regarding the outcome of the bond hearing held.

      **ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      Respondent's motion to dismiss the petition (Dkt. # 7) is **denied**.

2.      The petition for writ of habeas corpus (Dkt. # 1) is **granted in part and denied in part**.

3.      Within thirty (30) days from the entry of this order, respondents shall take petitioner before an immigration judge for an individualized bond hearing and a determination as to whether it is necessary to continue to detain petitioner.

4.      Counsel for respondents shall report to this court within ten (10) days following the bond hearing regarding compliance with this order.  Respondents' written report must include notification regarding the outcome of the bond hearing held.

5.      Petitioner's motion to compel and expedite ruling (Dkt. # 11) is **denied as moot**.

      **DATED** this 16th day of March, 2020.

                                           CLAIRE V. EAGAN
                                          UNITED STATES DISTRICT JUDGE